**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| C & E SERVICES, INC., and<br>CARL L. BIGGS, | )<br>)<br>)<br>) |  |
| Plaintiff, | )<br>) |  |
| v. | )<br>) | Civil Action No. 03-1857 (JMF) |
| ASHLAND INC., | )<br>)<br>) |  |
| Defendant. | )<br>) |  |

**MEMORANDUM OPINION**

Before me are <u>Defendant Ashland Inc.'s First Motion *In Limine* (Testimony and References to Ashland's Settlement with the Government) [#112]</u> ("First Motion"), <u>Defendant Ashland Inc.'s Second Motion *In Limine* (To Exclude GSA OIG Draft Audit Reports, Statements Contained Therein, and Arguments that the OIG's Claims were Meritorious) [#113]</u> ("Second Motion"), <u>Defendant Ashland Inc.'s Third Motion *In Limine* (To Exclude Evidence of C&E Services, Inc.'s Alleged Damages) [#114]</u> ("Third Motion"), and <u>Defendant Ashland Inc.'s Fourth Motion *In Limine* (To Exclude Jimmy J. Jackson's Testimony and Opinions Regarding Damages) [#115]</u> ("Fourth Motion") (together, the "Motions").

For the reasons stated below, the First Motion, Second Motion, and Third Motion will be denied, and resolution of the Fourth Motion will be deferred.

- 2 -

**I.     Introduction**

    **A.     The Nature of the Lawsuit**

The General Services Administration ("GSA") awarded the defendant Ashland Inc. ("Ashland") a Multiple Award Schedule ("MAS") contract in December 1991. A post-award audit of that contract began in April 1996 by the GSA Office of Inspector General ("OIG"). OIG ultimately concluded that Ashland had overcharged government customers in violation of the terms of the MAS contract, and referred the case to the United States Attorney's Office in New Jersey. A False Claims Act investigation was opened that was ultimately resolved by Ashland paying the government over one million dollars (the "Settlement").

Plaintiffs C&E Services, Inc. ("C&E") and Carl L. Biggs ("Biggs") (together, "plaintiffs") allege that this information was withheld from them as part of a scheme by Ashland to place the defectively priced products onto C&E's GSA contract schedule; that placement ultimately led to a suspension of plaintiffs' ability to contract with the government and to an investigation by federal authorities. Ashland in turn seeks damages against plaintiffs for their alleged failure to abide by the terms of the contract between it and C&E.

    **B.     The Motions in Limine**

In this action for the damages plaintiffs claim flowed from their use of Ashland's defective prices, Ashland seeks to exclude at trial the use of: (1) the Settlement; (2) the draft audit reports prepared by GSA as part of its investigation of Ashland's MAS contract; (3) several elements of the damages sought by plaintiffs; and (4) the testimony of an expert witness.

**II.     Analysis**

    **A.     The First Motion: Evidence of the Settlement**

Ashland seeks in its First Motion to "bar plaintiffs from characterizing a 1997 Settlement Agreement between the United States and [Ashland] and conduct or statements made in the settlement negotiations, as an admission of liability, and to bar any reference at trial to the amount that Ashland paid in settlement."  First Motion at 1.  Ashland cites Rule 408 of the Federal Rules of Evidence to argue that this information is not admissible to show that the claims against Ashland had any merit, or to use for purposes of impeachment.  Defendant Ashland Inc.'s Memorandum in Support of its First Motion *In Limine* [#112-1] ("First Memo") at 3-5.  Ashland also argues that the amount of the Settlement should be excluded under Rules 402 and 403 because it is irrelevant and unduly prejudicial.  Id. at 5-7.

    **1.     Rule 408**

Rule 408 of the Federal Rules of Evidence provides that evidence of a settlement is not admissible "to prove liability for, invalidity of, or amount of a claim that was disputed[1] as to validity or amount, or to impeach through a prior inconsistent statement or contradiction."  Fed. R. Evid. 408(a).  The Rule, however, does "not require exclusion if the evidence is offered for [another] purpose[, such as] proving a witness's bias or prejudice; negating a contention of undue delay; [or] proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408(b).

Plaintiffs insist that they only intend to use the Settlement at trial for purposes not prohibited by Rule 408.  Rather than offering it as proof that Ashland's prices were

---

[1] The Settlement includes a provision stating that the payment by Ashland was "made in compromise of the disputed liability . . . [and does] not constitute an admission of liability or responsibility on the part of any party hereto."  Settlement at ¶ 14, attached to First Motion as Exhibit 2.

defective, as alleged by the government, plaintiffs intend to offer the Settlement to establish that Ashland made knowingly false representations about the viability of its prices and the severity of the government's allegations. <u>Plaintiffs' Opposition to Defendant Ashland Inc's First Motion *In Limine*</u> [#124] at 11-13. To that end, plaintiffs argue that the amount paid as part of the Settlement is necessary to establish the falsity of Ashland's assertion that it had settled the government's claim for a "low, cost of defense" amount. <u>Id.</u> at 13-15.

Ashland insists that, despite plaintiffs' assurances to the contrary, plaintiffs are in fact attempting to use the settlement as proof of the validity of the government's claim, which is clearly prohibited by the Rule. Moreover, Ashland offers a stipulation – "that a settlement was reached between Ashland and the government under which Ashland was released from all claims without an admission of liability, and that Ashland paid a sum of money in connection with the settlement" – which they argue would suffice. First Memo at 4 n.1.

### a.  **Separate and Distinct**

Plaintiffs rely on two cases to argue that evidence of a settlement should be admitted when "the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered." <u>Zurick Am. Ins. Co. v. Watts Indus., Inc.</u>, 417 F.3d 682, 689 (7th Cir. 2005) (citing <u>Towerridge Inc. v. T.A.O., Inc.</u>, 111 F.3d 758, 770 (9th Cir. 1997)). Because the Settlement concerned the government's investigation of Ashland and not the present litigation, plaintiffs argue that Rule 408 is inapplicable here.

This limitation suggested by plaintiffs is not supported by the plain language of the Rule and, moreover, there is contrary authority in other circuits. See, e.g., Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652 (4th Cir. 1988) (citing United States v. Contra Costa County Water Dist., 678 F.2d 90, 92 (9th Cir. 1982)); Branch v. Fidelity & Cas. Co., 783 F.2d 1289, 1294 (5th Cir. 1986). See also 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 4.59 at 153 (3d ed. 2007) ("Some modern authority . . . hold[] that settlements, and settlement talks, are not excludable when they involve parties to the present dispute negotiating or reaching agreements with persons who are not parties. This result seems hard to square with the terms of Fed. R. Evid. 408 and admitting the proof undermines the purposes of the principle of exclusion."); 2 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 408.02 at 408-13 (9th ed. 2006) ("Rule 408 applies even if the settlement is between a party to the litigation and a nonparty. A party's settlement with another is not admissible to prove the validity or the amount of the claim before the Court. The Rule is drafted to provide every incentive for compromise, and without such a broad rule of exclusion, litigants would be deterred from free-flowing settlement negotiations where multiple suits have been or might be brought.").

Indeed, in our judicial system, lawsuit number one often breeds lawsuit number two; as a magistrate judge who often presides over settlement discussions, I am constantly exposed to the concern of litigants that a settlement may be used by a third party to establish liability. The very policy underlying Rule 408 would be defeated if it did not operate to preclude the admissibility of settlement discussions in a case involving another party or another claim.

### b.   Other Purposes

Because Rule 408 does apply to this situation, the question becomes whether the evidence that plaintiffs will offer is being offered "to prove liability for, invalidity of, or amount of [the] claim . . . or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). Ashland insists that, despite plaintiffs' assertions otherwise, the Settlement will be used "to establish that the government's defective pricing allegations were well founded." Defendant Ashland Inc.'s Reply Memorandum in Support of Its First Motion *In Limine* [#131] ("First Reply") at 7 ("plaintiffs' claims are inextricably intertwined with the question of Ashland's liability to the government for defective pricing"). Ashland cites Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989) for the proposition that when the claim settled and the claim asserted are inextricably intertwined, the exclusion that permits the use of settlement discussions for other purposes cannot apply. Id.

Examination of that case and a recent decision by the Second Circuit that refines it, PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., No. 06-3691-cv, 2008 WL 564970 (2d Cir. Mar. 4, 2008), indicates that plaintiffs' evidence may be admitted for the limited purpose of proving that Ashland defrauded plaintiffs because the audit and Settlement may establish that Ashland had information that it misrepresented or did not provide to plaintiffs.

In Trebor, the plaintiffs sued for breach of contract and offered a settlement agreement for the purpose of disproving the defendant's statute of frauds defense. 865 F.2d at 507. The lower court, invoking Rule 408, disregarded the document, and the court of appeals affirmed, stating:

> Appellants urge that they sought to introduce the documents only in order to meet the statute of frauds. However, such a proffer presents two conflicting goals: proving the existence of a contract in compliance with the statute of frauds and overcoming the strictures of Rule 408. For appellants, satisfying the statute of frauds was the necessary first step to proving, ultimately, the validity of their claims of breach of contract. Since the two questions were so closely intertwined, admission of the documents even initially for the purpose of meeting the statute of frauds requirement would, under the circumstances of this case, militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408.

Id. at 510.  As the court later explained in PRL, "[p]roving compliance with the statute of frauds by presenting a signed writing evidencing an agreement is also, in effect, proving the contract – a necessary element of the plaintiffs' breach of contract claim."  2008 WL 564970, at *5.  This use was too "close to the Rule's categorical prohibition of evidence proving liability."  Id.

In PRL, however, the same court was faced with a trademark infringement action in which defendant, the alleged trademark infringer, argued that plaintiff, the trademark holder, had acquiesced to the use of its mark during settlement discussions occurring many years earlier.  2008 WL 564970, at *2.  The holder of the mark argued that this acquiescence defense was merely a pretext, and that – in conflict with Rule 408 – the defendant's true purpose in offering evidence of the settlement discussions was to cast doubt on the validity of plaintiff's infringement claim by suggesting to the jury that the plaintiff "did not believe that [defendant's] mark was confusingly similar to its own."  Id. at *3.

The court acknowledged that there was a "likely logical overlap between the two issues [inasmuch as a] trademark owner's assurance to one it later accuses of infringing

- 7 -

that the owner will not object to the use of a certain mark may well suggest to a jury that the owner of the mark did not believe the mark in question was likely to cause confusion." Id. It noted, however, that acquiescence was a valid defense and that the "only way [defendant] could place its entitlement to estoppel in contention was by offering that evidence." Id. Moreover, the court noted that elements of the estoppel defense were distinct from the elements of the infringement claim. Id. at 5.

Plaintiffs assure me that they intend to offer the Settlement and its amount as evidence of express misrepresentations, half truths, and deceptions as to the nature of the audit, its conclusions, and the Settlement itself – which they claim led to their injuries. Because this evidence is not being used to establish the validity of the underlying claims extinguished by the Settlement, but rather for the "other purpose" of establishing Ashland's misrepresentations upon which plaintiffs allegedly relied, the facts here are much closer to PRL than Trebor, and the evidence is not barred by Rule 408.

### 2. Rule 403

I fully appreciate my obligation, under Rule 403, to balance the probative value of the evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. I also recognize that there exists a risk that the jury might deduce from the Settlement and the amount paid a concession by Ashland of the truth of the government's claims. To guard against that risk I will insist that the evidence pertaining to the settlement be presented as briefly as possible and I hope in the form of a stipulation between the parties. I also intend to instruct the jury as follows:

> In this trial, it will occur that I will admit evidence that is admitted for one purpose and not another. This is called "limited admissibility." For example, if it was claimed that a man could not speak, I would admit a statement he made not so you could consider the truth of what he stated but to prove that he could speak.
>
> In this case, you have just heard evidence of how Ashland settled a case with the government for a certain amount of money without conceding its liability. I can assure you that parties to lawsuits frequently settle lawsuits on this basis.
>
> I must instruct you that you may not consider the evidence of the settlement as proving the validity of the government's claim that was settled. Instead, you may only consider it insofar as it bears on what Ashland did and did not tell the plaintiffs about the settlement and the government's investigation.

### B.   The Second Motion: Audit Reports

Ashland also seeks to preclude plaintiffs from offering at trial two draft audit reports prepared by GSA as part of its audit of Ashland's MAS contract. Ashland argues that these reports are hearsay and do not qualify under the exemption in Rule 803 that permits the introduction in "civil actions [of] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8). Memorandum of Law in Support of Defendant Ashland Inc.'s Second Motion *in Limine* [#113-1] ("Second Memo") at 4-12.

Plaintiffs counter that the reports are not hearsay because they are not being offered for the truth of their contents, but rather to establish what Ashland knew about the government's position. Plaintiffs' Opposition to Defendant Ashland Inc's Second Motion *in Limine* [#125] ("Second Opp.") at 4-7. Plaintiffs also argue that, even if they

are considered hearsay, the reports are exempted from exclusion under Rule 803(8) as trustworthy factual findings resulting from a government investigation. Id. at 8-12.

It is unnecessary to resolve the question of whether the reports qualify under the hearsay exemption of Rule 803(8) because I will not permit them to be offered for the truth of their contents, evidence of which is not relevant to plaintiffs' claims. The reports may instead be offered for the sole purposes of establishing the accuracy of what was told to plaintiffs by Ashland regarding the government investigation and audit, and to establish whether Ashland was aware of information regarding the government investigation and audit that it should have disclosed to plaintiffs. In addition, I will present the following instruction to the jury:

> You have heard evidence about certain draft audit reports that were prepared by the GSA. As I have explained to you when I discussed the settlement, evidence may be admissible for only a limited purpose.
>
> While I have admitted the draft audit reports, you must not consider them for the purpose of deciding whether or not the government's claims about Ashland's alleged defective pricing were true. Instead, you may consider them only insofar as the audit reports bear on plaintiffs' claim that Ashland deceived them in what it said and did not say about the government's investigation.

### C. The Third Motion: Damages

Ashland also moves to preclude plaintiffs from "(1) submitting to the jury evidence of purported damages based on lost profits, bonus payments to C&E employees, and prejudgment interest; (2) introducing any evidence of damages that was not disclosed during discovery; (3) introducing a summary schedule of legal fees incurred in addressing legal problems supposedly caused by Ashland; and (4) otherwise attempting to recover legal fees in this lawsuit." Third Motion at 1.

### 1.  Ashland's Motion for Summary Judgment

Ashland previously moved for summary judgment on several grounds.  Included in its motion was the argument that, even if Ashland had withheld information about its allegedly defective prices, the only damages plaintiffs could claim were those associated with their initial application to add Ashland's products to their GSA schedule at prices that would not be accepted by the GSA.  <u>Memorandum of Points and Authorities in Support of Defendant Ashland Inc's Motion for Summary Judgment</u> [#86] at 22.  They now raise again their argument that there is no causal connection between the damages claimed and any alleged act or omission by Ashland.  <u>Memorandum of Law in Support of Defendant Ashland Inc.'s Third Motion *In Limine*</u> [#114-1] ("Third Memo") at 4-8.

Plaintiffs, however, insisted that they were sent on a fool's errand to have GSA buy their products at prices GSA had already found to be improper.  Their damages, they argued, were directly related to the costs they incurred as a result of that fool's errand: the costs incurred in responding to the government investigation that was triggered by their use of Ashland's prices, and the business opportunities lost because of the resulting suspension.  <u>Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment</u> [#88] at 24.

Judge Sullivan denied the motion on the grounds that there was a reasonable basis in the evidence for a jury to find that the damages sought by plaintiffs were proximately caused by Ashland's actions.  <u>Memorandum Opinion</u> [#94] at 20-22.  I appreciate that the items plaintiffs will claim at trial may not have been as specifically stated then as they are now, but I have no intention of revisiting Judge Sullivan's conclusion that plaintiffs' theory of damages may be submitted to the jury – subject, of course, to the requirement

that, at the close of plaintiffs' case, I am able to conclude that a reasonable person could find based on the evidence offered at trial that the damages sought were proximately caused by Ashland's behavior.

### 2. The Proper Role of a Motion *in Limine*

Ashland also argues that a large portion of the damages claimed by plaintiffs is unsupported by the evidentiary record. Third Memo at 9-12. It is worth noting that a motion *in limine* should not be used to resolve factual disputes or weigh evidence. Sigma Tool & Mach. v. Nagayama Elect. Ind. Co., Ltd., No 00-cv-2936, 2002 WL 34354482, at * 2 (D.D.C. Dec. 18, 2002). Nor should a motion *in limine* be used to argue, as Ashland does here, than an item of damages may not be recovered because no reasonable person could find that it was proximately caused by the defendant's acts. That is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards. See Provident Life & Accident Ins. Co. v. Adie, 176 F.R.D. 246, 250 (D. Mich. 1997) (motion *in limine* cannot be used as substitute for motion for summary judgment); Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069-70 (3d Cir. 1990) (motions *in limine* are not subject to the same procedural safeguards as motions for summary judgment). See, e.g., Davis v. Gen Accident Ins. Co., No. CIV. A 98-4736, 2000 WL 1780235, at *4 (E.D. Pa. Dec. 4, 2000) (holding in an employment case that defendant's motion *in limine* was an improper vehicle to argue that plaintiff could not recover back and front pay because he had failed to make out a claim for constructive discharge; that argument "is untimely for a summary judgment motion and too early for a motion for judgment as a matter of law").

Ashland's attempt to use a motion *in limine* to preclude claims that they argue lack evidentiary support must fail.  See Bradley, 913 F.2d at 1069 ("Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.").

### D. The Fourth Motion: Expert Testimony

Ashland has also moved *in limine* to bar the testimony of an expert witness.  I will discuss with counsel at the pre-trial conference the setting of a date for a hearing on this motion, out of the presence of the jury, to ascertain whether the proposed testimony meets the requirement of Rule 703 of the Federal Rules of Evidence.

## III. Conclusion

For the reasons stated above, the First Motion, Second Motion, and Third Motion will be denied, and resolution of the Fourth Motion will be deferred.

An Order accompanies this Opinion.

Dated: March 26, 2008                                /s/
                                                    JOHN M. FACCIOLA
                                                    UNITED STATES MAGISTRATE JUDGE