**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**C&E SERVICES, INC., and**              )
**CARL L. BIGGS,**                       )
                                        )
      **Plaintiffs,**              )
                                        )
      **v.**                       )      **Civil Action No. 03-1857 (JMF)**
                                        )
**ASHLAND INC.,**                        )
                                        )
      **Defendant.**               )
_____)

**MEMORANDUM OPINION**

Plaintiff C&E Services, Inc. ("C&E") brought suit against defendant Ashland Inc.

alleging that Ashland committed fraud, breach of fiduciary duty and breach of the duty of good

faith and fair dealing when it failed to disclose information about a government audit.  Ashland

counterclaimed against C&E claiming that C&E breached the contract, its duty of good faith and

fair dealing and that Ashland is entitled to equitable indemnification for a settlement that it paid

to the government.  A jury trial was held in April 2008, and the jury concluded that Ashland had

breached its fiduciary duty and the duty of good faith and fair dealing to C&E, but had not

committed a fraud.  The jury also found that C&E breached its duty of good faith and fair dealing

to Ashland but had not breached the contract.  The issue of equitable indemnification was

reserved for this Court's decision.  Prior to submission of this case to the jury, both parties filed

motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  Those

motions were denied from the bench on May 1, 2008.  Now pending are the parties' renewed

motions for judgment as a matter of law filed pursuant to Rule 50(b).

# I.   Background.

Ashland and C&E are both manufacturers of water treatment products.  In 1987, the

parties entered into an agreement whereby C&E would purchase products from Ashland and

resell them to the public.  The agreement explicitly stated that C&E would serve as Ashland's

agent.  Both Ashland and C&E sold products to the federal government in accordance with

approved General Services Administration ("GSA") schedules.  In 1997, the government audited

Ashland's GSA schedule and alleged that Ashland had not made discounts available to

government customers that had been made available to other customers, i.e. that its prices were

"defective," a serious allegation that could lead to its disbarment.  Ashland, however, entered

into a settlement agreement with the government that resolved its concerns and decided not to

renew its GSA schedule.

At that time, Ashland and C&E negotiated an amendment to their 1987 agreement.

Where in the past C&E sold Ashland's products under Ashland's GSA schedule, the amendment

provided that C&E would add Ashland products to its own GSA schedule and sell them directly

through that schedule.  C&E argues that Ashland did not tell C&E that the government had found

Ashland's prices to be defective, leading C&E to use the same prices that the government had

found to be defective when used by Ashland.

C&E took efforts to try and add Ashland's products to its GSA schedule, and, in the

meanwhile, began selling Ashland's products to government customers.  In its application to the

GSA, C&E certified that the prices it charged government buyers were the same as the lowest

prices it charged its private clients.  C&E continued to charge the same prices that Ashland had

charged and that the government claimed were defective.  The government investigated C&E and

Ashland.  Ashland settled with the government for $350,000.  During the negotiation process, the question arose whether the settlement would absolve C&E of any liability, but the government representative insisted on more money before he would agree to absolve C&E as well. Meanwhile, C&E and two of its executives were suspended from government contracting.

C&E claims that it would have never charged the "defective" prices had Ashland told it that a government audit had found the prices to be "defective" and that C&E was suspended because of the defective prices.  Ashland, however, claims that the suspension arose out of C&E's decision to sell products that were not on their GSA schedule without disclosing that fact.

This case went to trial for 14 days in April and May of 2008.  Both parties moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure at the close of their cases in chief.  Both motions were denied from the bench on May 1, 2008 and the issues were submitted to the jury.  The jury awarded C&E $219,000 in damages for breach of the implied covenant of good faith and fair dealing and $45,000 in prejudgment interest; $340,000 in damages for breach of fiduciary duty and $100,000 in prejudgment interest.  The jury also awarded Ashland $3,200 for breach of the duty of good faith and fair dealing.  A judgment was entered consistent with the jury's verdict, and the parties now renew their motions for judgment as a matter of law under Rule 50.

## II.   Legal Standard.

Federal Rule of Civil Procedure 50(a) provides, in pertinent part, that "[i]f . . . a court finds that a reasonable jury would not have a significant evidentiary basis to find for a party on that issue, the court may (A) resolve the issue against the party."  Fed. R. Civ. P. 50(a). Therefore, judgment as a matter of law is first appropriate when "no reasonable juror could reach

the verdict rendered in the case." Athridge v. Rivas, 421 F. Supp. 2d 140, 145 (D.D.C. 2006)

(quoting U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 735 (D.C. Cir. 1998)); see Fed.

R. Civ. P. 50(a).  When deciding a motion for judgment as a matter of law, the Court must

"consider[] the evidence in the light most favorable to the non-moving party and mak[e] all

reasonable inferences in its favor."  Id. (quoting Pitt v. District of Columbia, 404 F. Supp. 2d

351, 353 (D.D.C. 2005), aff'd in part, rev'd in part on other grounds, 491 F.3d 494 (D.C. Cir.

2007)).  Judgment as a matter of law in favor of the moving party is only proper if, under those

circumstances, "there is no legally sufficient evidentiary basis for a reasonable jury to have found

in [the non-moving party's] favor under controlling law."  Pitt, 404 F. Supp. 2d at 353.  The

Court is not permitted to weigh the evidence or assess the credibility of witnesses.  Hayman v.

Nat'l Acad. of Scis., 23 F.3d 535, 537 (D.C. Cir. 1994).  Thus, "even if the Court finds the

evidence that led to the jury verdict unpersuasive, or that it would have reached a different result

if it were sitting as fact-finder, that is not a basis for overturning the jury's verdict and granting

judgment as a matter of law."  Pitt, 404 F. Supp. 2d at 354 (citing 9 James Wm. Moore et al.,

MOORE'S FEDERAL PRACTICE § 50.60[1] at 50-87 (3d ed. 2002)).

If, as occurred here, a motion for judgment as a matter of law is not granted, the court is

deemed to have submitted "the action to the jury subject to the court's later deciding the legal

questions raised by the motion."  Fed. R. Civ. P. 50(b).  In such a situation, the movant may, after

a verdict against her, "file a renewed motion for judgment as a matter of law."  Id.  The movant

seeking judgment as a matter of law is arguing that, even if the jury were to resolve issues of fact

in her opponent's favor, the movant is still entitled to prevail.

With one exception where it claims that there was insufficient evidence of proximate

4

cause for the damages the jury awarded, Ashland proceeds on this basis, insisting that, even if there was a sufficient evidentiary basis for the jury's verdict, the law does not entitle plaintiff to the verdict it secured because (1) principals, like Ashland, do not owe agents any fiduciary duty; (2) even if such a duty was owed at one point, it could not pertain to or control the relationship between Ashland and C&E when they were negotiating a modification of their relationship; (3) their new relationship did not constitute a joint venture in which the parties owed each other fiduciary duties; (4) C&E's damages, as a matter of law, could not have been proximately caused by Ashland's conduct; (5) there is no independent cause of action for breach of the implied duty of good faith and fair dealing, whether the contract at issue is governed by the Uniform Commercial Code or the common law; (5) recognizing such an action duplicates the award C&E received on its breach of fiduciary duty claims and (6) C&E's recovery is barred by what Ashland says is the principle expressed as "*in pari delicto*."

### III.   Analysis.

### A.   Breach of Fiduciary Duty.

C&E alleges that it was in a fiduciary relationship with Ashland whereby Ashland owed C&E a fiduciary duty at the time that the parties entered into the 1998 amendment.  In support, C&E says that the 1987 agreement created a principal-agent relationship, with C&E acting as the agent and Ashland as the principal.  It argues that Ashland owed C&E a fiduciary duty by virtue of that relationship, and the relationship endured until the execution of the 1998 amendment. Further, in 1998, C&E alleges that the relationship changed to a joint venture, which also carries fiduciary duties.  The jury was instructed that if it found that the parties were either in a principal-agent relationship, or were joint venturers, then Ashland owed a fiduciary duty to C&E.

Ashland responds with several arguments.  First, Ashland says that, while it is "black letter law" that agents owe fiduciary duties to their principals, there is no authority for the proposition that principals owe fiduciary duties to their agents.  Second, Ashland argues that the parties could not have been in a fiduciary relationship during the course of the negotiations leading up to the 1998 amendment.  Third, Ashland argues that the parties were not joint venturers, but instead entered into a manufacturer-distributor relationship, which does not carry fiduciary duties.

The jury was presented with two independent bases for finding the existence of a fiduciary duty: (1) a principal-agent relationship and (2) a joint venture.  Even if I were to find in Ashland's favor on the principal-agent relationship argument, for example, sufficient evidence may still exist to support the jury's finding that Ashland breached a fiduciary duty based on the alternate theory that the parties were joint venturers.   The jury's verdict should only be set aside if Ashland prevails on all of its arguments, and I will address each of these arguments in turn.

### 1.   Whether Ashland could have owed C&E a fiduciary duty by virtue of its status as a principal in an agency relationship.

Ashland argues that it cannot owe C&E a fiduciary relationship by virtue of any principal-agent relationship because principals do not owe fiduciary duties to their agents.  In support, Ashland cites Multicom, Inc. v. The Chesapeake and Potomac Telephone Co., No. 88-CV-1886, 1988 WL 118411, at *4 (D.D.C. Oct. 27, 1988), where Judge Gasch held that "[a]lthough it is well established that an agent owes a fiduciary duty to his principal, no corresponding fiduciary duty is owed by a principal to an agent."  Id.  Judge Gasch's opinion stands alone in this Circuit, and the D.C. Court of Appeals has not yet ruled, but various courts nationwide that have recently

been confronted with this issue have agreed with Judge Gasch.  E.g., Fidelity Nat'l Title Ins. Co.
v. Title First Agency, Inc., No. 06-CV-13961, 2008 WL 4371838, at *6 (E.D. Mich. Sept. 22,
2008); Warrentech Auto. Inc. v. Heritage Warranty Ins. Risk Retention Group, Inc., Nos. 07-C-
3539, 07-C-6977, 2008 WL 4876936, at *5 (N.D. Ill. Aug. 12, 2008); MDM Group Assocs., Inc.
v. CX Reinsurance Co. Ltd., U.K., 165 P.3d 882, 888 (Colo. Ct. App. 2007); Metro. Enters.
Corp. v. United Techs. Int'l, No. 03-CV-1685, 2006 WL 522384, at *4 (D. Conn. Feb. 27, 2006).

Accordingly, I would be inclined to agree with Ashland's position that the D.C. Court of
Appeals would follow those other courts had this issue been raised prior to the case being
submitted to the jury.  See Tidler v. Eli Libby Co., Inc. 851 F.2d 418, 423-25 (D.C. Cir. 1988).

After review of the many filings and arguments that Ashland has raised in this case,
however, my initial suspicion was confirmed – that I had yet to hear this argument.  There is no
discussion of this concern in the summary judgment briefing before Judge Sullivan, in Ashland's
Rule 50 Motion for Judgment as a Matter of Law, in the various e-mails and filings regarding
jury instructions, or in the arguments I presided over regarding the Rule 50 motions and jury
instructions.

The initial jury instruction that plaintiff proposed contained the following sentence:

> If you find that C&E and Mr. Biggs entered into a
> relationship with Ashland by virtue of which C&E
> and Mr. Biggs were to be the agents of Ashland,
> then Ashland owed C&E and Mr. Biggs a fiduciary
> duty of good faith and fair dealing in the incidents
> of their relationship.

Plaintiff's Proposed Jury Instruction No. 7 [#128-A].  At no point in the process of drafting the
instructions did Ashland object to that statement.  Instead, Ashland objected to the scope of the

principal's duty to its agent.  See Defendant Ashland Inc.'s Objections to the Court's Initial

Determinations as to Jury Instructions [#176] at 5 ("Ashland objects to Plaintiff's Jury

Instruction No. 7 because it misstates the principal's fiduciary duty to an agent.  D.C. adopts the

Restatement of Agency, which states that a principal's good faith duty extends only to

information 'material' to the agent's actions 'on the principal's behalf.'  Plaintiff's Proposed

Instruction concerns duties owed by a parent company to a subsidiary under D.C. law.").

Ashland then requested that the Court add the following definition of agency: "An agency is the

fiduciary relationship which results from the manifestation of consent by one person to another

that the other shall act on his behalf and subject to his control."  Ashland's Proposed Revisions to

the Court's Proposed Jury Instructions [#238-14] at 17.  It also sought to add the word "material"

to qualify the principal's duty to disclose facts to the agent.  Id.  Ashland did not, however, object

in any way to the sentence that clearly instructs the jury that principals owe fiduciary duties to

their agents.  Thus, the final instruction that was read to the jury contained that language.

Similarly, in oral argument on the jury instructions and Rule 50 motions, both parties

focused on whether a principal-agent relationship existed, and Ashland did not object to the

underlying assumption that the existence of the relationship was important because the

relationship itself imposed a fiduciary duty on Ashland.  See generally Transcript of Proceedings

(5/1/08) ("5/1/08 Tr.") [#231] at 61:3-66:8, 68:11-24, 70:15-71:25, 74:3-16, 105:9-25, 106:13-

111:13.  Finally, in its Rule 50 motion, captioned Defendant Ashland, Inc.'s Motion for

Judgment as a Matter of Law [#174], Ashland specifically says "to the extent a fiduciary

relationship existed between plaintiff and Ashland, it solely existed by reason of the principal-

agent relationship."  Id. at 17.  At no point does it object to the proposition that Ashland, if found

to be in a principal-agent relationship with C&E while negotiating the contract, would also owe

C&E a fiduciary duty.

This motion is brought pursuant to Rule 50(b), which provides that, when the Court

denies a motion for judgment as a matter of law brought at the close of the evidence, it is

considered to submit the case to the jury subject to the Court's later deciding those legal issues.

Fed. R. Civ. P. 50(b).  Accordingly, "the posttrial motion is limited to those grounds that were

specifically raised in the prior motion for judgment as a matter of law, . . . [and] the movant is

not permitted to add new grounds after trial."  Thomas v. Mineta, 310 F. Supp. 2d 198, 204

(D.D.C. 2004) (quoting Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001)); see also David

v. District of Columbia, 436 F. Supp. 2d 83, 90 n.2 (D.D.C. 2006) ("Because defendants did not

raise this argument in their original motion, the argument is deemed waived and will not be

considered."), appeal dismissed, No. 06-CV-7131, 2006 WL 3086931 (D.C. Cir. Oct. 17, 2006).

As Ashland did not raise this argument in its Rule 50 motion, or in argument on the Rule 50

motion, and specifically did not object to a jury instruction dealing with this exact controversy, I

find that this argument is waived.

### 2.  Whether Ashland owed C&E a fiduciary duty while they were negotiating the 1998 amendment.

While maintaining that Ashland owed no fiduciary duty to C&E at any time, Ashland

alludes to two other theories why, even if it once had a fiduciary duty to C&E, that duty was not

operative during the process of negotiating the amendment to the 1987 contract.

Ashland is saying that it is impossible for parties, despite their previous relationship as principal

and agent, to maintain their fiduciary relationship while they are negotiating a new relationship,

9

even when the new relationship may also impose fiduciary duties.  This is so because, by definition, each party is pursuing its own individual interest, rendering it impossible for their relationship to be a fiduciary one during the negotiations.

All of this is premised on the proposition that an agent breaches his fiduciary relationship when he tries to serve two masters in the same transaction.  It then follows, apparently, that when the agent is pursuing his own interest in negotiations leading up to a modification of the relationship there cannot be a fiduciary relationship between the principal and the agent.  I am not sure how Ashland would deal with the fact that there must be a relationship for there to be a breach.  I am also unpersuaded by Ashland's analysis.

First, an agent can represent both sides to a transaction provided he makes complete disclosure.  Urban Invests. Inc v. Branham, 464 A.2d 93, 96 (D.C. 1986).  In such a situation, he has a fiduciary obligation to both masters.

Second, from the (incorrect) premise that an agent can never serve two parties to a transaction, does not flow the proposition that his fiduciary relationship to the other party has ended merely because they are negotiating its termination or modification.  That an agent can be liable to one principal if he serves that principal and another does not mean that the agent is somehow disqualified from negotiating with his principal, let alone that he is relieved of his fiduciary relationship during negotiations with his principal.  While there is no D.C. Court of Appeals case directly on point, this Court has determined that "District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied."  High v. McLean Fin. Corp., 659 F. Supp. 1561, 1568 (D.D.C. 1987) (internal

quotation omitted).  There is no reason to suppose that the D.C. Court of Appeals would

conclude that the relationship between an agent and a principal is stripped of its fiduciary nature

merely because they are negotiating a modification or even the termination of their relationship.

To the contrary, this Court, interpreting District of Columbia law, has stated that the agent's

obligation to treat his principal fairly survives even the agent's making plans to go into direct

competition with his principal.

Mercer Mgmt. Consulting Inc. v. Wilde, 920 F. Supp. 219, 233 (D.D.C. 1996) ("[T]he law is

clear that an agent can make arrangements or plans to go into competition with his principal

before terminating his agency, provided no unfair acts are committed or injury done his

principal.").

Indeed, it is relatively easy to understand why, as a matter of social policy, a fiduciary

relationship would continue to exist during negotiations leading up to its termination or

modification.  In such negotiations, the person owed the fiduciary relationship may be at her most

vulnerable such as when a lawyer seeks to withdraw from her relationship with her client or a

trustee seeks to be relieved of any further trust relationship.  There is simply nothing in District

of Columbia law that could permit the conclusion that the District of Columbia Court of Appeals

would conclude that a fiduciary relationship does not persist into the negotiations that seek a

modification or termination of that relationship.

Second, Ashland argues that if a fiduciary relationship persisted, then the parties were

acting outside the scope of their relationship when they were negotiating the amendment.

Ashland directs the Court to Sind v. Pollin, 356 A.2d 653, 655 (D.C. 1976), where the D.C.

Court of Appeals held that the fiduciary duty between former joint venturers did not extend to

activities outside the scope of the joint venture, including the process of negotiating an agreement that terminated the joint venture.  Whether the parties were acting within the scope of the fiduciary relationship is a question of fact for the jury to decide, not a question of law for the court.  See Adams v. Vertex, Inc., No. 04-CV-1026, 2007 WL 1020788, at *6 (D.D.C. Mar. 29, 2007); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng, 697 F. Supp. 1224, 1226 (D.D.C. 1988).  In Sind, it was also clear that the parties intended to terminate their relationship. Provided there is a minimal level of evidence from which a reasonable jury could determine that C&E and Ashland were acting within the scope of a fiduciary relationship when they agreed to modify their relationship, then the jury's determination on the issue must stand.  Here there was evidence  that the parties were acting within the scope of their previous arrangement because the purpose of the agency relationship was to sell Ashland's products, through C&E, to government customers, as was the purpose of their new agreement.  The amendment to the 1987 agreement unquestionably deals with the sale of Ashland's products, through C&E, to government customers albeit under different terms.  A reasonable jury could have concluded that the parties continued to carry out the same duties while amending their agreement.  While the jury could have reached a contrary conclusion, it cannot be said that a reasonable person had to conclude that a fiduciary relationship existed up to the negotiations, ended during the negotiations, and resumed under the new agreement.

### 3.    Whether Ashland and C&E entered into a joint venture by virtue of the 1998 amendment.

Ashland argues that under D.C. law, parties cannot be joint venturers unless they share profits.  Though Ashland tries valiantly to extrapolate a series of prerequisites to a joint venture

under D.C. law similar to those one might find in Maryland or Virginia, the cases simply aren't there.   See Marine Engineers Beneficial Assoc. Dist. Two v. Cunard Line Ltd., No. 91-CV-654, 1993 WL 141069, at *2 (D.D.C. Apr. 19, 1993) ("Defendant initially argues that plaintiffs have failed to show each of the criteria that courts have required for the existence of a joint venture agreement.   However, as plaintiffs point out, courts in the District of Columbia appear not to have been so strict about the elements of a joint venture agreement . . . and have permitted the inference of such an agreement from the conduct of the parties.").   In fact, the main case Ashland cites for its proposition that a joint venture cannot exist without profit sharing, Thomas v. Hycon, Inc., 244 F. Supp. 151 (D.D.C. 1965), was decided under Maryland law.

In D.C., "[t]wo or more persons who join in a particular business enterprise for profit create a 'joint adventure' or 'joint venture.'" Jonathan Woodner Co. v. Laufer, 531 A.2d 280, 286 n.8 (D.C. 1987) (quoting Libby v. L.J. Corp., 247 F.2d 78, 81 (D.C. Cir. 1957)).   The question of whether a given relationship is a joint adventure is one for the trier of fact.   Id. at 287 ("The existence vel non of a joint venture is a factual issue properly reserved for the . . . trier of fact.").   Thus, in order for Ashland to succeed on its motion for judgment as a matter of law, it must demonstrate that, viewing the evidence in the light most favorable to C&E, no reasonable juror could have determined that Ashland and C&E joined in a business enterprise for the purpose of making a profit.   However, there is ample evidence in the record to suggest that Ashland and C&E joined forces for the purpose of selling Ashland's products to government customers and making profits for both parties involved.

13

### 4.    Proximate cause.

Ashland also argues that, even if there was a breach of fiduciary duty, that breach was not a proximate cause of C&E's damages.  Instead it argues that C&E's damages were brought about by its own decision to sell products that were not on its GSA schedule and represent that the products were on the schedule.  There was evidence presented to the jury at trial from which the jury could conclude that the use of the allegedly defective prices caused C&E to incur damages.  Thus, as causation is a question of fact for the jury, I will not second guess the jury's view of the evidence.

### B.    Breach of the Duty of Good Faith and Fair Dealing.

C&E argues that Ashland breached its duty of good faith and fair dealing by withholding information about the government audit, which prevented C&E from carrying out its contractual obligation to add Ashland's products to its GSA schedule.  C&E focuses on requests it made to Ashland for specific information requested by the GSA.

Ashland makes several claims in response.  First, Ashland claims that there is no independent cause of action in D.C. for breach of the duty of good faith and fair dealing, and therefore, to prevail, C&E was required to bring a breach of contract claim.  Ashland maintains that there is no independent cause of action regardless of whether the contract is governed by the Uniform Commercial Code ("UCC") or the common law, but that the contract should be governed by the UCC.  Second, Ashland argues that the cause of action for breach of the duty of good faith and fair dealing is duplicative of the cause for breach of fiduciary duty because C&E bases its claims on the same conduct.  Third, Ashland argues that the evidence is insufficient to support C&E's claim.  Fourth, Ashland invokes the doctrine of *in pari delicto* to argue that

14

because the jury found both parties had breached the duty of good faith and fair dealing, the bad

actions should cancel each other out.

**1.     Whether there is an independent cause of action, under D.C. law, for breach of the
duty of good faith and fair dealing.**

**a.     UCC.**

The UCC duty of good faith and fair dealing, codified in D.C. Code § 28:1-103,[1] states

that "[e]very contract or duty within this subtitle imposes an obligation of good faith in its

performance or enforcement."  The comment explains that the section should not be read to mean

that failure to act in good faith or deal fairly is itself actionable, but failure to act in good faith or

deal fairly while performing or enforcing a specific contractual duty or obligation constitutes a

breach.  <u>See</u> comment to D.C. Code § 28:1-103.  C&E did not plead "breach of contract" in its

<u>Second Amended Complaint</u> [#54].  Thus, Ashland says the claim should be dismissed.

Count Five of the Second Amended Complaint is entitled "Breach of Implied Covenant

of Good Faith and Fair Dealing."  While the title does not include the words "Breach of

Contract" C&E does allege in paragraph 89 within Count Five that "Ashland breached its duty of

good faith and fair dealing under that agreement in a number of ways, including . . . impeding

CES' ability to perform its obligations under the amendment by failing to provide correct and full

information."  <u>Second Amended Complaint</u> at 19-20.  While Ashland claims that C&E was

trying to pursue a claim that sounded in tort, in reality, C&E pled specifically a breach of an

implied duty that arises out of a contract.  Under the UCC, the duty is to be treated as though it

were a term of the contract, and therefore, to breach the duty is to breach the contract.  <u>See</u> <u>In re</u>

---

[1]All references to statutes in this opinion refer to the versions available on Westlaw or
Lexis.

<u>Beitzell & Co.</u>, 163 B.R. 637, 649-50 (Bankr. D.D.C. 1993) ("A provision implied as a matter of law in every loan agreement should be treated as appearing on the face of the agreement."); D.C. Code § 28:1-203, comment ("This section does not support an independent cause of action for failure to perform or enforce in good faith.  Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract . . ."); <u>see also</u> <u>In re Fannie Mae Secs. Litig.</u>, 552 F.3d 814, 820-21 (D.C. Cir. 2009) (all contracts include an obligation of good faith and fair dealing).

It may be true that C&E did not entitle its claim "Count V Breach of Contract," but plaintiff's evidence, if accepted by the jury, tended to establish that Ashland acted in bad faith or unfairly in the enforcement of the contract by withholding information from C&E that Ashland knew that C&E needed in order to satisfy its contractual obligation to add Ashland's products to its GSA schedule.  Ashland would have me accept the proposition that, despite the fact that the parties bargained for C&E's obligation to get the products on the schedule, Ashland should not be required to give information to C&E that is necessary to carry out C&E's obligation because the contract does not explicitly say that Ashland has to provide that information.  Deriving an obligation to provide information that only Ashland possesses and is necessary for C&E to perform the contract flows naturally and necessarily from an obligation to act in good faith and not to prevent the other party from rendering the consideration that is due that party under the contract.  Since that proposition flows so naturally from the implied covenant, one cannot be said to be reading additional terms into the contract that the parties did not bargain for.  Whether the action about which C&E complains is labeled as a breach of the duty of good faith and fair

16

dealing or a breach of the implied covenant of good faith and fair dealing that is read into the contract is really just a matter of semantics.

Further, Ashland did not argue for the application of the UCC until it filed its Rule 50 motion in the middle of the trial.  Accordingly, to the extent this contract is governed by the UCC, I will permit C&E to conform the pleadings to fit the proof.

Rule 15(b) of the Federal Rules of Civil Procedure permits a "party to move –at any time, even after judgment– to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."  Fed. R. Civ. P. 15(b); see also Baker v. John Morrell & Co., 382 F.3d 816, 830-31 (8th Cir. 2004).  Leave to amend is to be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2); see Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 738 (D.C. Cir. 2007) ("Leave to amend one's complaint is liberally permitted."), cert. denied, 128 S. Ct. 92 (2007). The only impediment to the granting of such leave now that the trial has ended would be a showing that there would have been a significant difference between the way in which the case was tried and the way it would have been tried had C&E moved to amend its complaint before trial to assert that Ashland's breach of the duty of good faith and fair dealing breached the contract.  In no other way, can Ashland establish prejudice which might preclude the liberal amendment of pleadings, even after judgment, that Rule 15 requires.  See 3 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE, ¶ 15.18 (3d ed. 1997) ("[A court should be liberal in allowing amendments to conform [the pleadings] to the evidence.") (citing First Nat'l Bank of Louisville v. Cont'l Nat. Bank and Trust, 933 F.2d 466, 469 (7th Cir. 1991) and Cotton Bros. Baking Co., Inc. v. Indus. Risk Insurers, 690 F. Supp. 1541, 1548 (W.D. La. 1988)).  Also, it would seem that a showing of such prejudice is essential for Ashland to establish that my granting the motion to

amend now is an abuse of discretion.  Cf. Cotton Bros. Baking Co, Inc., 690 F. Supp. at 1548

(interpreting Rule 15(b) to require serious showing of prejudice, such as surprise; if no showing,

refusing to permit leave to amend to permit assertion of unpleaded issues at trial is abuse of

discretion).

 I cannot think of any different facts that C&E would have put forth in support of this

claim if it were titled a breach of contract claim.  Nor can I see how Ashland would have

proceeded differently.  This is not the first time Ashland has flirted with this defense; Ashland

proceeded before and at trial upon the theory that Virginia law controlled, and Virginia does not

permit an independent claim.  See Eplus Tech. Inc. v. Nat'l RR Passenger Corp., 407 F. Supp. 2d

758, 762 (E.D. Va. 2005).  Ashland did not rest on that defense alone, however.  In these motions

and in previous filings, Ashland has fully defended the merits of C&E's claim, not just whether it

should be permitted to bring it.  It is not as though Ashland put all of its eggs in this basket and

would now be prejudiced because it would not have an opportunity to defend itself fully.

 Since there would have been no difference between the case that was tried and the one

that would have been tried had C&E called its claim "breach of contract" before and at trial, it

would be an abuse of discretion for me to refuse it leave to amend its complaint to conform to the

proof offered at trial.

**b. Common law.**

 Ashland argues that even under the common law there is no independent cause of action

for breach of the duty of good faith and fair dealing in D.C.  C&E vehemently opposes this

contention, arguing that the law clearly allows such a claim.  I disagree with both parties' claims

that the law clearly takes one position or another.  Ashland, for one, cites primarily cases decided

by D.C. courts but applying other jurisdictions' law.  C&E, on the other hand, cites to language

that does not address the issue at bar and argues it clearly favors its position.  The only case I

have found that is directly on point specifically concludes that the area of the law is not clear

before opining that D.C. courts would probably follow Ashland's view.  See Crystal Prods., Inc.

v. Doc Severinsen Orchestras, No. 90-CV-932, 1994 WL 507546, at *4 (D.D.C. Sept. 10, 1992).

While that opinion certainly supports Ashland's interpretation, one unpublished opinion that is

over 15 years old and has not been cited by any other opinions hardly renders the issue "clear."

What is clear is that the duty must arise out of a contract between the parties.  See Kerrigan v.

Britches of Georgetowne, Inc., 705 A.2d 624, 626-27 (D.C. 1997) (holding that at-will employee

could not have a claim for breach of the implied covenant of good faith and fair dealing because

there was no employment contract to which the duty could be implied); see also Messina v.

Nationwide Mut. Ins. Co., 998 F.2d 2, 5 (D.C. Cir. 1993).  Also, the duty is not a means to add

new terms to the agreement; it merely requires that the parties behave fairly and reasonably in the

performance and enforcement of the contract.  Adler v. Abramson, 728 A.2d 86, 88 (D.C. 1999).

I am not prepared to dismiss C&E's claim, which was proven to the satisfaction of the jury at

trial, without a showing that the law clearly prohibits bringing the claim as an independent cause

of action.

Because I find that the distinction between how the breach of the duty of good faith and

fair dealing is treated under the common law and the UCC is not important to my resolution of

this case, I will not address whether this contract should be considered to be one primarily for the

sale of goods or the sale of services.

## 2.    Whether this cause of action is duplicative.

Ashland argues that C&E's cause of action for breach of the duty of good faith and fair dealing is cumulative of its action for breach of fiduciary duty because both claims rely on the same facts.  While it is true that the basis of both claims is that Ashland withheld information about the 1997 audit, both claims do not necessarily focus on the same information or the same instance of withholding.  The breach of the duty of good faith and fair dealing must necessarily arise out of the performance or enforcement of the contract, not out of the contract negotiations.  Ellipso, Inc. v. Mann, 541 F. Supp. 2d 365, 373-74 (D.D.C. 2008) ("Although this duty is implied in all contracts, the Court is aware of no District of Columbia authority that would imply such a duty in parties' pre-contract negotiations.").  C&E alleges both that Ashland failed to disclose information about the audit during their negotiations and in response to C&E's request for information after the contract was executed.  It is entirely possible that the jury awarded damages to C&E for breach of fiduciary duty arising out of the failure to disclose information during negotiations, and for breach of the duty of good faith and fair dealing for failure to disclose information after the contract was executed.  This would represent two separate instances of wrongdoing entitling C&E to damages.

Ashland argues that the fact that the jury was concerned that it might be allowing double recovery and that I told it to award the damages it felt that C&E suffered from each claim and the total would be reduced if necessary to avoid duplicative damages suggests that this verdict is duplicative.  C&E argues that the jury was obviously concerned with preventing double recovery and therefore this verdict must not allow for double recovery.  I find each argument equally persuasive, which is to say, I don't know what the jury did, but I do know that there is enough

evidence in the record for the jury to find two separate causes of action arising out of separate allegations.  Accordingly, I will leave the verdict alone.

### 3.   Sufficiency of the evidence.

In the District of Columbia, "all contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C. 2006) (quoting Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000)).  Liability lies for breach of the duty if a party (1) evades the spirit of the contract, (2) willfully renders imperfect performance, or (3) interferes with performance by the other party.  Id.  C&E presented evidence at trial to suggest that the government requested certain information from C&E as part of its petition to add Ashland products to its GSA schedule, that C&E requested that information from Ashland and that Ashland said it did not exist or did not give it to C&E.  Under those circumstances, a reasonable fact-finder could determine that Ashland interfered with C&E's ability to perform its contractual duty to add Ashland products to its GSA schedule.

### 4.   *In pari delicto.*

Ashland also argues that because the jury found that both parties breached their duty of good faith and fair dealing, neither should recover under the doctrine of *in pari delicto* or unclean hands.  "[T]he legal principle of *in pari delicto* . . . holds that if the parties are in equal fault, the law will help neither of them." Wager v. Pro, 575 F.2d 882, 884 (D.C. Cir. 1976).  The doctrine is generally only applied when the parties agree to undertake an illegal activity; the Court will not enforce a contract between two parties to engage in illegal activities.  See United States v. Phillip

Morris USA, Inc., 300 F. Supp. 2d 61, 76 (D.D.C. 2004) ("A party truly *in pari delicto* is one

who has himself violated the law in cooperation with the defendant.") (quoting Pinter v. Dahl,

486 U.S. 622, 636 (1988)).  This argument was not presented in Ashland's Rule 50 brief, and

therefore the Court need not address it, but even if it were properly preserved, Ashland has not

demonstrated that the contract at issue here was illegal.  Therefore, the defense of *in pari delicto*

will be of no assistance to Ashland here.

### C.    Pre-judgment Interest.

The jury awarded pre-judgment interest to C&E on both its claim for breach of fiduciary

duty and the duty of good faith and fair dealing.  Ashland argues that there is no legal basis for

the jury's award.  First, with respect to the interest awarded for the breach of the duty of good

faith and fair dealing, D.C. Code §15-109 specifically authorizes the award of prejudgment

interest in contract cases, and that claim undoubtedly arises out of the contract between these

parties.  Thus, the jury's award of prejudgment interest on the claim for breach of the duty of

good faith and fair dealing will stand.

The breach of fiduciary duty claim sounds in tort, so it is governed by § 15-108, which

provides that the Court may award prejudgment interest in an action to recover for a liquidated

debt if such interest is payable by contract, law or usage.  Ashland argues that this debt is not

liquidated because it was not ascertainable until the jury awarded a specific amount in damages.

However, the courts of the District of Columbia have continued to move away from strict

adherence to the liquidated-unliquidated distinction and instead focus on whether the interest is

necessary to fully compensate the party for its loss.  See Bragdon v. Twenty-Five Twelve

Assocs., LP, 856 A.2d 1165, 1171 (D.C. 2004); District of Columbia v. Pierce Assocs., Inc., 527

22

A.2d 306, 310 (D.C. 1987).  The jury was instructed in accordance with these principles and thus must have concluded that the interest awarded was necessary to make the plaintiff whole.  I will not disrupt its decision.

### D.    Equitable Indemnification.

Ashland asserted a claim for equitable indemnification seeking recovery from C&E for the $350,000 it paid in settlement with the government following the second investigation.  Since that claims sounds in equity, it was understood that the Court would resolve it after the jury returned its verdict on all the other counts, including the counterclaims Ashland had asserted for breach of contract and breach of the implied covenant of good faith and fair dealing.

### 1.    Principles of Indemnification.

Under traditional principles, indemnity is available only if the party seeking indemnity (called the indemnitee) from the indemnitor has discharged the liability of both.  RESTATEMENT (THIRD) OF TORTS, Apportionment of Liability § 22, Reporter's Note at 277 (2000). Indemnification exists to prevent unjust enrichment; such enrichment occurs only when the indemnitee's payment to the victim protected the indemnitor from any future liability.  Id.  If, on the other hand, the indemnitor remains liable to the party with whom the indemnitee settled, there is no unfairness that needs rectification; the indemnitor was liable to the plaintiff before the settlement and remains liable after it.  She has not been unjustly enriched by the settlement payment to the plaintiff.  Hence, it is fundamental that the indemnitee must have discharged the liability of the indemnitor for there to be any indemnification.  "No case has permitted noncontractual indemnity against a person still liable to the plaintiff."  Id.

## 2.   District of Columbia Law.

The District of Columbia[2] follows this principle to the letter as perfectly illustrated by the

difference in the two most significant cases, District of Columbia v. Washington Hospital Center,

722 A.2d 332 (D.C. 1998) and Caglioti v. District Hospital Partners, 933 A.2d 800 (D.C. 2007).

In Washington Hospital Center, the District of Columbia, having settled with a pedestrian

who had been injured during a high speed police case, sought indemnification from the Hospital

Center, claiming that the Center had aggravated the pedestrian's injuries by its malpractice when

she was taken to the Center after the accident.   Citing the principle discussed above,[3] the court of

appeals held the District's entitlement to indemnification was a function of whether its settlement

with the pedestrian was made and accepted in full satisfaction of her claim and with the intention

to release all parties who might be liable to the pedestrian.   Wash. Hosp. Ctr., 722 A.2d at 341

(quoting Lamphier v. Wash. Hosp. Ctr., 524 A.2d 729, 735 (D.C. 1987)).   The court looked to

the intention of the parties as to these two issues, concluding that if the language was clear and

unambiguous, the plain language of the release controlled.   Id.   Since the release between the

District and the pedestrian released only the District of Columbia, its officers, agents and

employees and contained no provision for the release of any other individuals or entities against

whom the pedestrian had claims, it was clear that there was no basis in the release to conclude

---

[2] After hearing argument from the parties on May 1, 2008, I determined that D.C. law applied to this case because no single state had an overwhelming interest in seeing its law applied and application of D.C. law would not impair the interests of the other states who could claim a right to have their law applied.

[3] Note that the section of the RESTATEMENT (SECOND) OF TORTS that addressed indemnity, Section 886B, was replaced with Section 22 of the RESTATEMENT (THIRD) OF TORTS. See RESTATEMENT (THIRD) OF TORTS §22 cmt. A.

that the pedestrian released any claim she might have had for medical malpractice against the Hospital Center.  Id. at 342.

The plaintiff in Caglioti, like the pedestrian in Washington Hospital Center, claimed to have been victimized by a hospital's malpractice after he was seriously injured by a wheel chair malfunction that threw him to the ground.  Caglioti settled with the wheel chair manufacturer but, unlike the pedestrian, he signed a release that expressly released the manufacturer and any person or entity that provided medical care to him after the accident.  Caglioti, 933 A.2d at 804-05.  Additionally, the same release indicated that the settlement was in full compensation for all the injuries Caglioti suffered, to include any aggravation of injuries caused by the putative malpractice of the hospital.  Id. at 809-10.  It therefore followed that the wheel chair manufacturer could pursue (or assign) a claim for indemnity against the hospital because it had discharged the hospital's liability to Caglioti.

The difference in result in the two cases dictates the determination of this case.  Turning, as District of Columbia law requires, to the clear language of the agreement[4] and the release it contained in paragraph seven, there is no expressed intention to relieve C&E of liability and no indication whatsoever that the parties were agreeing that the payment resolved entirely the liability that C&E might have to the government.

Moreover, if parole evidence were available, it promptly defeats Ashland's claim.  Peter White, who represented Ashland at trial, also represented Ashland during the negotiations that led to Ashland's settlement with the government for $350,000.

---

[4] See Caglioti, 933 A.2d at 808-09; Wash. Hosp. Ctr., 722 A.2d at 332.

White specifically testified that he discussed whether the United States would also settle whatever claim it had against C&E but the idea was rejected. White also explicitly acknowledged in his testimony that "there was no release of C&E," (4/30/08) AM Tr. at 59:22, and that the government did not intend to release its claims against C&E. Id. at 59:13-15 ("Q: All right. But it suffices to say that you did not resolve any of C&E's potential liability; isn't that right? A: Mr. Mene [i.e. the Assistant United States Attorney] rejected the offer to do so.").

It would be hard to conceive of a more obvious indication that White and the Assistant United States Attorney were only settling the government's claim against Ashland and not settling its claim against C&E.

Since it is indubitably clear that the settlement did not intend to relieve C&E of any further liability and that it was not designed to settle the entire claim that the Untied States had against both of them, Ashland's claim for indemnification has to fail.

### 3.    Preclusive Effect of the Jury's Verdict.

When, as occurred here, the Court resolves an equitable claim after a jury verdict, it must give preclusive effect to the first resolution of any factual issue presented so that it follows the jury's factual findings with respect to legal claims when it resolves the equitable claims. Fogg v. Ashcroft, 254 F.3d 103, 110 (D.C. Cir. 2001). In order to be given this preclusive effect, the issue of fact must have been actually litigated and determined by the jury's verdict. Id. (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1981)); see also Consol. Edison Co. v. Bodman, 449 F.3d 1254, 1258 (D.C. Cir. 2006) (issue must have been actually and necessarily decided in prior decision to be given preclusive effect in the second case).

An examination of the trial evidence, the parties' argument and the Court's instructions and the verdict form indicates beyond any argument that the jury was not called upon to make any factual finding as to the intention of the government and of Ashland when they entered into the settlement agreement that resolved the government's claim.  Accordingly, the jury's verdict has no preclusive effect on the equitable indemnification claim.

### D.    Ashland's Claim for Breach of Good Faith and Fair Dealing.

The jury found in favor of Ashland on its claim that C&E breached its duty of good faith and fair dealing and awarded $3,200 in damages.  C&E argues that the jury's verdict must be set aside because there was no proof of damages adduced at trial that could support the jury's verdict.  C&E claims that the only damages Ashland presented to the jury were the $350,000 that was the subject of Ashland's request for indemnification that I have just denied.  Thus, C&E alleges that Ashland is trying to get around the fact that it must demonstrate an entitlement to indemnification to recover that money by framing it as something else.  I am not persuaded by that argument, however.

In addition to evidence about the $350,000 that Ashland ultimately paid to settle, the jury heard that Ashland incurred legal fees during the settlement process.  The jury could properly conclude that Ashland suffered those damages as a result of C&E's breaching the implied duty of good faith and fair dealing.  Accordingly, C&E's Motion for Judgment as a Matter of Law on Ashland's Counterclaim [#198] will be denied.

### E.    Costs.

Both C&E and Ashland argue that they are the prevailing party in this litigation for the purpose of recovering costs under Federal Rule of Civil Procedure 54(d).  Rule 54(d) provides

that "unless a federal statute, these rules, or a court order provides otherwise, costs – other than

attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d).   While the

Court has discretion to determine whether they are appropriate, costs should be awarded as a

matter of course unless the

Court articulates a good reason for denying them.   Baez v. U.S. Dep't of Justice, 684 F.2d 999,

1004 (D.C. Cir. 1982) (en banc).   A prevailing party is "one who has been awarded some relief

by the court, or one who succeeds on any significant issue in litigation which achieves some of

the benefits they sought in bringing suit."   Stanley v. Proctor, 591 F. Supp. 2d 12, 15 (D.D.C.

2008).   Under that definition, both Ashland and C&E could conceivably be considered to be

prevailing parties because judgment was entered in favor of each of them.   See Select Milk

Producers, Inc. v. Johanns, 400 F.3d 939, 946-47 (D.C. Cir. 2005) (outlining three criteria by

which a party might demonstrate that it is a prevailing party); Lopez v. District of Columbia, 383

F. Supp. 2d 18, 22 (D.D.C. 2005) (holding that a party can still be a prevailing party even if it

does not get all the relief it seeks).   In a case such as this, where there are multiple claims, the

parties can only be compensated for the claims on which they prevailed.   Brown v. Bolger, 102

F.R.D. 849, 856 (D.D.C. 1984).   C&E initially brought six claims and judgment was entered in

its favor on two of them.   Ashland brought four counterclaims and judgment was entered in its

favor on one of them.

Despite the fact that this appears to put the parties nearly in equipoise, they argue that I

should weigh the importance of the claims by looking at which claims were really predominant,

and the difference between the amounts sought and the amounts recovered to determine which

party really won the case as a whole.   While I understand Ashland's point that it prevailed on the

fraud claim, which was the most significant monetary claim – and arguably the most stringently

pursued at trial[5] – "plaintiff need not prevail on the primary issue in the lawsuit" to be a

prevailing party.  Lopez, 383 F. Supp. 2d at 22.  Thus, I am not convinced that Ashland's

successful defense of the fraud claim should automatically nullify any claim C&E has to

prevailing party status.  I am not alone in my confusion; in this sort of situation, courts have

taken various positions, including declaring the party who recovered more money the prevailing

party, holding that there is no prevailing party, holding that both are prevailing parties and

various other permutations.  Compare Dan Cartage Co. v. United States, 289 F.2d 623, 627 (6th

Cir. 1961) (net judgment winner prevails) with Ennis v. Ring, 353 P.2d 950, 954 (Wash. 1959)

(if exact offset neither prevails) and Moran v. Lewis, 41 A.2d 905, 905 (Conn. 1945) (both

parties get costs when defendant prevailed on counterclaim).

Because both Ashland and C&E have arguably prevailed in this case, both are arguably

entitled to costs on the claims that they successfully pursued or defended.  However, in reality,

lawyers do not track costs based on individual claims and defenses.  It would be extremely

difficult if not impossible to differentiate between the various theories pursued here in any

meaningful way.  Further, the purpose of Rule 54(d) is to deter frivolous litigation by impressing

upon would be litigants that failure to prove their case will result in their having to pay for their

opponents' costs.  That concern isn't present here, where both parties advanced some meritorious

claims.  Given the practical difficulty and the fact that ordering the parties to bear each other's

costs would not meaningfully advance the purpose of the rule, I will use my discretion to leave

---

[5] One could certainly argue that since the breach of fiduciary duty and duty of good faith
and fair dealing claims arose out of the same facts but required a lower standard of proof, the
emphasis on fraud was at least partially tactical.

them where they lie.  Each party shall bear its own costs.  Accordingly, the plaintiff's <u>Motion to</u>
<u>Strike Defendant Ashland's Bill of Costs</u> [#209] will be granted.  <u>Plaintiff's Motion for Leave to</u>
<u>File Bill of Costs</u> [#208] will be denied.

## IV.   Conclusion.

For the reasons stated above, plaintiff's <u>Motion for Judgment as a Matter of Law on</u>
<u>Ashland's Counterclaims for Breach of Contract and Breach of the Implied Covenant of Good</u>
<u>Faith and Fair Dealing</u> [#183] will be denied.  Plaintiff's <u>Motion for Judgment as a Matter of</u>
<u>Law on Ashland's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair</u>
<u>Dealing and Motion to Alter or Amend the Judgment Entered by the Clerk of the Court</u> [#198]
will be denied.  Defendant's <u>Motion for Judgment as a Matter of Law, Renewed Motion to Alter</u>
<u>Judgment</u> [#200] will be denied.  Plaintiff's <u>Motion for Leave to File Bill of Costs</u> [#208] will be
denied.  Plaintiff's <u>Motion to Strike [203] Bill of Costs</u> [#209] will be granted.  Finally,
plaintiff's <u>Unopposed Motion to Permit Plaintiff's Reply in Support of Plaintiffs' Renewed</u>
<u>Motion for Judgment as a Matter of Law Filed One Hour Out of Time</u> [#206] will be granted as
conceded.

An Order accompanies this Memorandum Opinion.

Date: March 9, 2009                                    _____/S/_____
                                                       JOHN M. FACCIOLA
                                                       U.S. MAGISTRATE JUDGE